IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EARL HOWARD, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 2:15-cv-2800-JDT-dkv |
| CITY OF MEMPHIS, ET AL., | ) ) ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT AND GRANTNG LEAVE TO AMEND

On December 14, 2015, Plaintiff Earl Howard ("Howard"), a pre-trial detainee at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) He filed an amended complaint on December 31, 2015. (ECF No. 4.) After Howard submitted the necessary documentation, the Court issued an order on January 28, 2016, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 10.) The Clerk shall record the defendants as the City of Memphis;[1] Officer First Name Unknown ("FNU") Boyland,[2] #1371; Detective ("Det.") A. Leatherwood, #10812; and Det. R. Woolley, #7074.

---

[1] The Court construes the claims against the Memphis Police Department ("MPD") as claims against the City of Memphis.

# I. THE AMENDED COMPLAINT

The amended complaint (ECF No. 4) appears intended to supersede the original complaint. In the amended complaint, Howard alleges that Defendant Boyland and four other unnamed officers came to his home and beat him up. (*Id.* at 2.) Howard filed a report with MPD Internal Affairs, but nothing was done. (*Id.*) He states that Defendant Boyland had previously come by and harassed him "all the time" in an unspecified manner, but on this occasion he came in with several other officers and beat Howard up. (*Id.*) The detective on the case was Defendant Leatherwood. (*Id.*)

In a "statement" attached to the amended complaint, Howard elaborates on his claim. He alleges that Officer Boyland and other officers "come to my house . . . and made me place my hands on the table once they entered without a warrant." (ECF No. 4-1 at 1.) Howard states that all of the officers had their guns drawn and pointed at him, and Defendant Boyland "started kicking me in my ass threatening me. Saying he was gone [sic] kill me." (*Id.*) Howard asserts in another "statement" that when the officers arrived "they were threatening me to come out the house, I came out and they handcuffed me and went inside they didn't ask me any questions about what was going on or nothing. They violated my civil rights because I did nothing wrong." (*Id.* at 2.) That statement says nothing about Howard being subjected to any force.

---

[2] Plaintiff identifies this individual in the complaint and amended complaint as Officer Boyland. (ECF No. 1 at 1, 2; ECF No. 4 at 1, 2.) However, in a statement attached to the amended complaint, he refers to the individual as Officer Boyd. (ECF No. 4-1 at 1.) In this order, the Court will refer to the Defendant as Officer Boyland.

Howard states he had called Boyland's supervisor prior to this incident, complaining that Boyland had been following Howard around the neighborhood. (*Id.* at 1.) However, Defendant Woolley talked to Howard, and Howard told Woolley he was going to call Internal Affairs. (*Id.*) Woolley asked Howard to let him handle it first by asking his supervisor to talk to Boyland's supervisor. (*Id.*) Howard states he needs the FBI to investigate his case because it is all a misunderstanding. (*Id.*)

Howard also asserts a claim against Defendant Woolley, stating "I want to put him under investigation because he made a lot of false information and statements in my discovery packet." (*Id.* at 2, 3.) Howard states that Woolley "hasn't asked me any questions, how can he make a statement on me without investigating my case because they got me confused, I been locked up for 6 months now on some he say she say stuff." (*Id.* at 3.)

Howard seeks damages and medical expenses to compensate him for his pain and suffering, along with his freedom. (*Id.* at 3.)

By way of background, on November 5, 2015, two indictments were issued against Howard. Indictment #15 05613 charged him with one count of aggravated assault, one count of reckless endangerment with a deadly weapon, and two counts of possessing a prohibited weapon. *See* jssi.shelbycountytn.gov. Indictment #15 05614 charged one count of attempted second degree murder, one count of employing a firearm with intent to commit a felony, and one count of aggravated assault. *Id.* On March 24, 2016, Howard entered guilty pleas in #15 05613 to the aggravated assault and reckless endangerment charges and in #15 05614 to the aggravated assault charge; the remaining

charges were dismissed. He received a five-year suspended sentence in each case, to run concurrent. *Id.* A petition to revoke Howard's probation was recently filed. *Id.*

## II. ANALYSIS

A.  <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule

4

8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court

5

cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Howard filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this

6

section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The Court construes Howard's claims against the Memphis Police Department as claims against the City of Memphis. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of plaintiff's claim against the City of Memphis.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury

was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. *Raub v. Correctional Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint

contained conclusory allegations of a custom or practice); *Cleary v. Cnty of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom which caused injury to Plaintiff. Instead, it appears that Plaintiff is suing the City of Memphis because the City of Memphis employed persons who allegedly violated his rights.

Howard's claim for use of excessive force is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Not every use of force will state a § 1983 claim. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted); *see also id.* at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). The "reasonableness" inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). The proper application of this standard

9

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (citation omitted); *see also Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606 (6th Cir. 2006). "These factors are not an exhaustive list, as the ultimate inquiry is whether the totality of the circumstances justifies a particular sort of seizure." *Baker*, 471 at 606-07 (internal quotation marks omitted).

Howard's allegations against Defendants Boyland and Leatherwood do not sufficiently state a Fourth Amendment claim for use of excessive force. The only allegation against Leatherwood is that he was the detective on the case; there is no allegation that he was even present during the incident at Plaintiff's home. The allegations against Boyland indicate that he beat Howard up (ECF No. 4 at 2) or "kick[ed] [him] in [his] ass" (ECF No. 4-1 at 2). However, Howard does not state whether he was resisting the officers or whether he may have threatened them in any way. Furthermore, notwithstanding the fact that Howard seeks compensation for medical expenses, he does not assert that he suffered any actual injury as a result of Boyland's alleged use of force.

Howard has no claim against Defendant Woolley for placing allegedly false information and false statements in his discovery package, as Howard does not explain the nature of the information or how that information affected the case against him. In addition, to the extent Howard is claiming that the allegedly false information renders his convictions unconstitutional, his claims are barred by the decision in *Heck v. Humphrey*,

512 U.S. 477, 486-87 (1994) (holding a plaintiff has no cause of action under § 1983 if proof of his claims would call into question the validity of his confinement unless and until the prosecution is ended in his favor, an existing conviction is set aside or the confinement is declared illegal).

For all of the foregoing reasons, Howard's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

### III. STANDARD FOR LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be

11

salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court cannot conclude that any further amendment of Howard's claims would be futile as a matter of law.

## IV. CONCLUSION

The Court DISMISSES Howard's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to file a second amended complaint is GRANTED. Any second amended complaint must be filed within 30 days after the date of this order. Howard is advised that a second amended complaint will supersede the original and amended complaints and must be complete in itself without reference to that prior pleading. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Howard fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

                                                s/ **James D. Todd**
                                                JAMES D. TODD
                                                UNITED STATES DISTRICT JUDGE